IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES R. DALIOUS, : | |
| : | |
| Plaintiff, : | |
| : | CIVIL ACTION |
| v. : | |
| : | |
| KILOLO KIJAKAZI, Commissioner : | No. 20-cv-03586-RAL |
| of Social Security Administration,[1] : | |
| : | |
| Respondent. : | |

**RICHARD A. LLORET**
**U.S. MAGISTRATE JUDGE**                                                September 15, 2022

**MEMORANDUM OPINION**

The Commissioner of Social Security, through the decision of an Administrative Law Judge ("ALJ"), denied Mr. Dalious' application for Social Security disability benefits. This appeal followed. The ALJ determined that Mr. Dalious was able to do medium work with some restrictions. R. 15. Plaintiff claims the ALJ committed error by not giving appropriate weight to the treating physician's opinion. Plaintiff's Brief ("Pl.Br.") at 6, Doc. No. 20 at 6. I disagree. Plaintiff relies on outdated regulations in making his claim of error. Commissioner's Response ("Resp.") at 3-5, Doc. No. 23 at 3-5. Reviewing the ALJ's decision under the correct regulatory standards, I find she committed no error. Because I find that the ALJ did not commit error, I will affirm her decision.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as Defendant. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**PROCEDURAL HISTORY**

On September 4, 2017, Mr. Dalious applied for disability insurance benefits ("DIB") under the Social Security Act. R. 88. He claimed his disability began on March 10, 2017, due to a lower back injury. R. 87-88. Mr. Dalious' claim was denied, and he requested a hearing before an Administrative Law Judge ("ALJ"). R. 10. The ALJ held a hearing in April of 2019 and issued a decision denying benefits in June of 2019. R. 10, 21. Mr. Dalious' administrative appeal was denied. R. 1-3. Plaintiff filed a complaint in this court. Doc. No. 2. The parties have supplied the administrative record and briefed the appeal. Doc. Nos. 12, 20, and 23.

**FACTUAL BACKGROUND**

**A. The Claimant's Background**

Mr. Dalious was 60 years old on the date of his alleged disability onset. R. 19. He has a high school degree and can communicate in English. *Id*. Mr. Dalious had past relevant work as a rolling operator, a mill operator, and a machine operator, which qualified as substantial gainful activity, but the ALJ found that he is unable to perform his past relevant work. *Id*.

**B. The ALJ's Decision**

The ALJ found that Mr. Dalious was not eligible for DBI because he has not been under a disability, as defined by the Social Security Act. R. 20-21. In reaching this decision, the ALJ made the following findings of fact and conclusions of law pursuant to Social Security's five-step sequential evaluation process.[2]

---

[2] An ALJ evaluates each case using a sequential process until a finding of "disabled" or "not disabled" is reached. The sequence requires an ALJ to assess whether a claimant: (1) is engaging in substantial gainful activity; (2) has a severe "medically determinable" physical or mental impairment or combination of impairments; (3) has an impairment or combination of impairments that meet or equal the criteria listed in the social security regulations and mandate a finding of disability; (4) has the residual functional

At step one, the ALJ concluded that Mr. Dalious had not engaged in substantial gainful activity ("SGA") since the alleged onset date. R. 12. At step two, the ALJ determined that Mr. Dalious had the following severe impairments: degenerative disc disease, sciatica, hyperlipidemia (high cholesterol), and hypertension. *Id*. The ALJ noted that Mr. Dalious had other conditions that do not qualify as "severe." *Id*. At step three, the ALJ compared Mr. Dalious' impairments to those contained in the Social Security Listing of Impairments ("listing").[3] R. 14-15. The ALJ found that Mr. Dalious did not meet any listing criteria. *Id*.

Prior to undertaking her step four analysis, the ALJ assessed Mr. Dalious' residual functional capacity ("RFC"), or "the most [Mr. Dalious] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1). The ALJ found that Mr. Dalious had the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c), with some functional limitations: Mr. Dalious is able to lift and carry fifty pounds occasionally and twenty-five pounds frequently, is able to stand and walk for six out of eight hours in a work-day, sit for six out of eight hours in a work-day, frequently climb stairs, balance, stoop, kneel, crouch, and crawl, but cannot climb ladders or have concentrated exposure to temperature extremes, vibration, or hazards. R. 15. At step four, the ALJ found that Mr. Dalious does not have the RFC to perform any relevant past work. R. 19.

---

capacity to perform the requirements of her past relevant work, if any; and (5) is able to perform any other work in the national economy, taking into consideration her residual functional capacity, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

[3] The regulations contain a series of "listings" that describe symptomology related to various impairments. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1. If a claimant's documented symptoms meet or equal one of the impairments, "the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). If not, the sequential evaluation continues to step four, where the ALJ determines whether the impairments assessed at step two preclude the claimant from performing any relevant work the claimant may have performed in the past. *Id*.

At step five, based on the RFC and testimony from a vocational expert, the ALJ determined that Mr. Dalious would be able to perform representative work, such as a stock selector, a linen room attendant, and a dining room attendant. R. 20, 80-81. Because these jobs exist in significant numbers in the national economy, the ALJ concluded that Mr. Dalious was "not disabled." *Id.*

## STANDARDS OF REVIEW

My review of the ALJ's decision is deferential. I am bound by her findings of fact to the extent those findings are supported by substantial evidence in the record. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Accordingly, my review of the ALJ's findings of fact is limited to determining whether substantial evidence supports the ALJ's decision. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). If the ALJ's decision is supported by substantial evidence, her disability determination must be upheld. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *see also* 42 U.S.C. § 405(g). "A reviewing court reviews an agency's reasoning to determine whether it is 'arbitrary' or 'capricious,' or, if bound up with a record-based factual conclusion, to determine whether it is supported by 'substantial evidence.'" *Dickinson v. Zurko*, 527 U.S. 150, 164 (1999).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla but may be less than a preponderance." *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). I must rely on the record developed during the administrative proceedings along with the pleadings in making my

determination. *See* 42 U.S.C. § 405(g). I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). I must also defer to the ALJ's evaluation of evidence, assessment of the witnesses, and reconciliation of conflicting expert opinions. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009).

The ALJ's legal conclusions and application of legal principles are subject to plenary review. *See Krysztoforski v. Chater*, 55 F.3d 857, 858 (3d Cir. 1995). I must determine whether the ALJ applied the proper legal standards in reaching the decision. *See Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984). Accordingly, I can overturn an ALJ's decision based on an incorrect application of a legal standard even where I find that the decision otherwise is supported by substantial evidence. *Payton v. Barnhart*, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (citing *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983)).

**DISCUSSION**

Mr. Dalious' argument is straightforward. He says the ALJ erred by failing to give "controlling weight" to Dr. Ratner's opinion, because Dr. Ratner was Mr. Dalious' treating physician. Pl.Br. 6. Dr. Ratner opined that Mr. Dalious was able to perform only "light duty" work restricted to lifting and carrying no more than 30 pounds occasionally, with no repetitive bending, crouching, kneeling, no lifting and carrying from a floor level, and frequent changes of position based on pain. Pl.Br. 5 (citing R. 526). Mr. Dalious argues that these restrictions, if adopted, would have meant he was disabled. *Id*. His argument relies on an outdated legal standard.

On March 27, 2017, new regulations came into effect which changed the analytic framework under which medical opinion evidence is evaluated. The new regulations no

longer require an ALJ to give "controlling weight" to a treating physician's opinion, absent some exceptions, but instead require the ALJ to focus on the persuasiveness of each medical source's opinion:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.

20 C.F.R. § 404.1520c(a). The regulations state that supportability and consistency "are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions ... to be." *Id.* § 404.1520c(b)(2). Supportability means "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." *Id.* § 404.1520c(c)(1). Consistency means "[t]he more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." *Id.* § 404.1520c(c)(2). The regulations also instruct an ALJ to consider the physician's relationship with a claimant, whether the physician "has received advanced education and training" as a specialist, and other factors such as the medical source's familiarity with other evidence. *Id.* § 404.1520c(c)(3)–(5). Only the concepts of consistency and supportability, however, must be addressed by ALJs in their written opinions. *Id.* § 404.1520c(b)(2).

Though they provide a new analytical framework for ALJs, these regulations "[do] not authorize lay medical determinations by ALJs" and do not "relieve the ALJ of the responsibility of adequately articulating the basis for a medical opinion evaluation." *Kenyon v. Saul*, No. 1:20-CV-1372, 2021 WL 2015067, at *4 (M.D. Pa. May 19, 2021). "While the ALJ is . . . not bound to accept physicians' conclusions, [she] may

6

not reject them unless [she] first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected." *Cadillac v. Barnhart*, 84 F. App'x 163, 168 (3d Cir. 2003) (quoting *Kent v. Schweiker*, 710 F.2d 110, 115 n.5 (3d Cir. 1983)) (internal quotation omitted).

The new regulations no longer make medical opinions from treating sources eligible for "controlling weight." *Compare* 20 C.F.R. § 404.1520c(a) (new regulation) *with* § 404.1527 (old regulation). Because Mr. Dalious filed his application for benefits after March 27, 2017, the new regulations apply. *See* 20 C.F.R. § 404.1520c(a). Plaintiff's argument - that Dr. Ratner's opinions should be given "controlling weight" because he is a treating provider (Pl.Br. at 6-7) - rests on the wrong legal standard.

The ALJ found that Dr. Ratner's opinion was only mildly persuasive because it was "not entirely consistent with or supported by the objective medical record." R. 18. Consistency is one of the two primary characteristics the ALJ must assess under the new regulations. *See* 20 C.F.R. § 404.1520c(b)(2). Dr. Ratner related that Plaintiff underwent an L4-L5 fusion in June 2012, after which he recovered and was "able to perform his activities of daily living and full work duties." R. 406.[4] Dr. Ratner wrote that Mr. Dalious' pain and radiculitis returned, and he was diagnosed in December of 2016 with a disc herniation and protrusion at L1-L2, a bulging disc at L3-L4 and L4-L5, and a herniated disc at L5-S1. *Id*. Dr. Ratner stated that Mr. Dalious "does well with the interventional injections done on an ongoing basis using a transforaminal approach, along with conservative care,[5] compounded pain lotions and home exercise as

---

[4] Dr. Ratner's August 9, 2017, opinion appears in two locations, R. 406 and 526.
[5] I have on many occasions commented adversely on an ALJ's unsupported statement that a claimant is receiving "conservative" medical treatment. *See, e.g., Miller v. Saul*, 2020 WL 3498136, at *5 (E.D. Pa. 2020) ("an ALJ's . . .boiler-plate conclusion that a treatment history was 'conservative' is no more than lay

7

tolerated." *Id*. Dr. Ratner explained that he arranged a functional capacity exam for Mr. Dalious by another provider, which found that Mr. Dalious was able to perform light duty work with restrictions to lifting and carrying no more than 30 pounds, occasional - but not repetitive - bending, crouching, and kneeling, and no lifting and carrying from floor level. *Id*. Dr. Ratner opined that Mr. Dalious needed frequent changes in position based on his pain. *Id*.

The ALJ considered Dr. Ratner's opinion and found that it was "not entirely consistent with or supported by the objective medical record." R. 18. She contrasted the conclusions in Dr. Ratner's report with those of Dr. Ziba Monfared. *Id*. Dr. Monfared related, and the ALJ noted, that Mr. Dalious had a normal gait and full range of motion throughout his back, legs, and arms during his exam with Dr. Monfared in October 2017. R. 18 (*citing* R. 536, 545). During the exam Mr. Dalious exhibited "full range of motion, full strength, and no sensory deficits." R. 18. During the same examination Mr. Dalious had no difficulty rising from his chair or walking on his heel and toes for a short distance. R. 536, 545 (cited by the ALJ at R. 18). The ALJ noted that Mr. Dalious' condition had improved since his exam with Dr. Monfared in October of 2017: in May 2018, Dr. Ratner stated that Mr. Dalious had good pain relief following injections, his pain level was 1/10, and they discussed long-term pain management solutions. R. 18 (*citing* R. 550). In April 2019, Dr. Ratner reported that Mr. Dalious had "excellent relief of the pain" following an injection, and that his pain management would continue "as needed. R. 18 (*citing* R. 556). Dr. Ratner recommended conservative treatment,

---

opinion, unless supported by medical opinion evidence."). This case is a counterexample: the phrase "conservative care" was used by a treating physician. R. 406.

8

including topical pain lotion and a back support system, rather than opioid medication. R.556.

The ALJ also carefully considered Mr. Dalious' testimony and found that it supported her finding that he was not as limited as Dr. Ratner opined. R. 18. Mr. Dalious testified that he only occasionally took Ibuprofen for pain and was doing "really well" since he got the injections. R. 54. He had a lot of difficulty putting on shoes and socks before he got injected and went through physical therapy, but "as of today – all those [problems] are gone." R. 58. Mr. Dalious also testified that he was working part-time at the time of the hearing as a school bus driver, and that he worked for up to four hours per day driving the bus. R. 18 (testimony at R. 40). The ALJ explained that Dr. Monfared's finding that Plaintiff could perform a range of medium work was supported by Plaintiff's symptom improvement, conservative care, and his minimal examination findings (Tr. 18, 538-39). While some of the testimony of Mr. Dalious, and Dr. Ratner's report, painted a less optimistic picture of Mr. Dalious' condition, the ALJ's conclusion that Dr. Monfared's report more accurately reflected Mr. Dalious' condition was based on substantial evidence.

The ALJ concluded that Mr. Dalious could perform work at the medium[6] exertional level, with some added restrictions. R. 15. The ALJ properly incorporated her RFC findings in the hypothetical question to the vocational expert, who opined that there were numerous jobs in the national economy that someone with Mr. Dalious' RFC could perform. R. 20 (ALJ's opinion); 79-81 (testimony of vocational expert).

---

[6] The Social Security Regulations define medium work as involving "lifting no more than 50 pounds at a time and with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

9

I find that the ALJ reached a reasonable conclusion, under the appropriate regulatory scheme, and properly explained why she found Dr. Ratner's opinion less persuasive than Dr. Monfared's opinion. R. 15-19; *see Chandler*, 667 F.3d at 361 (an ALJ was entitled to rely on a consulting physician's opinion rather than a treating physician's opinion, even under the old regulatory scheme, where the ALJ properly explained how she evaluated the evidence).

## CONCLUSION

Because I find no error, the decision of the ALJ will be affirmed, and the appeal dismissed. I will enter an Order and Judgment accordingly.

BY THE COURT:

*s/Richard A. Lloret*
**RICHARD A. LLORET**
**U.S. Magistrate Judge**